UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAVID W. BAER, | ) |
| | ) |
|        Plaintiff | ) |
| | ) |
| v. | )    No. 2:11-cv-313-DBH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|        Defendant | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found on remand, following additional proceedings in the wake of this court's reversal of a prior unfavorable decision, that the plaintiff was capable as of his date last insured for SSD benefits, December 31, 2000, of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) failed to comply with this court's remand order of August 17, 2009, as well as the Appeals Council's remand order of February 4, 2010, (ii) improperly rejected the opinions of treating doctors, and (iii) failed to properly evaluate his

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 22, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

credibility. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 10) at 6-16.[2] I find no error and, accordingly, recommend that the court affirm the decision.

## I. Procedural Background

The plaintiff filed the instant application for SSD benefits on August 17, 2005, alleging on onset date of disability of November 1, 1995. *See* Record at 10-11. He later amended his alleged onset date to May 1, 2000. *See id*. at 11. A hearing was held on June 15, 2007, at which the plaintiff and his partner, Jason Reis, testified. *See id*. at 17, 20, 40. By decision dated July 27, 2007, Administrative Law Judge Jerry J. Bassett issued a decision finding that, from May 1 to December 31, 2000, the plaintiff retained the residual functional capacity ("RFC") to perform light and sedentary unskilled and semiskilled jobs existing in significant number in the national economy and, hence, was not disabled on or before December 31, 2000. *See* Findings 9-10, *id*. at 15.

The plaintiff appealed, following which this court granted an unopposed motion by the commissioner to reverse the decision and remand the case for further action. *See id*. at 676-81. On August 17, 2009, the court ordered that an administrative law judge conduct a *de novo* hearing and issue a new decision, and that the Appeals Council "instruct the ALJ to further consider the severity of Plaintiff's impairments prior to the date last insured of December 31, 2000, and continuing, based on a longitudinal and comprehensive analysis of the medical and other evidence, including the September 28, 2007, report from Dr. Leonard Korn." *Id*. at 676.

---

[2] During oral argument, the plaintiff's counsel referred several times to Social Security Ruling 83-20 ("SSR 83-20"), which pertains to the determination of the date of onset of disability. *See* SSR 83-20, reprinted in West's Social Security Reporting Service Rulings 1983-1991, at 49. I did not understand her to be making a stand-alone argument of violation of SSR 83-20. To the extent that she may have meant to do so, any such argument, which was not raised in her client's statement of errors, *see* Statement of Errors at 6-16, is waived, *see, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

On remand, the Appeals Council issued an order dated February 4, 2010. *See id*. at 683-87. After summarizing the Korn opinion, which had been issued subsequent to the July 27, 2007, adverse decision, it noted that, in addition to evaluating the Korn opinion:

> [T]he Administrative Law Judge should re-assess the residual functional capacity through the date last insured; and refer to Social Security Ruling 85-16 when assessing the mental limitations. The Administrative Law Judge is required to evaluate and explain the [plaintiff's] quality of daily activities both in occupational and social spheres.
>
> The [plaintiff's] actions with respect to medical examinations and his ability to sustain activities, interests, and relate to others over a period of time should be considered. The frequency, appropriateness and independence of the [plaintiff's] activities must be evaluated; and his level of intellectual functioning and his ability to function in a work-like situation.

*Id*. at 686. The Appeals Council ordered that the administrative law judge (i) update the evidence of the plaintiff's medical condition, (ii) further evaluate the plaintiff's subjective complaints and provide a rationale for that evaluation, (iii) evaluate his mental impairments in accordance with the commissioner's special psychiatric review technique and document the application of that technique with specific findings and appropriate rationale, (iv) refer to Social Security Ruling 85-16 when evaluating the mental impairments, (v) obtain evidence from a medical expert to clarify the nature and severity of the plaintiff's impairments, including whether they met or equaled any impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), and, if not, his RFC, (vi) give further consideration to the plaintiff's maximum RFC and provide a rationale with specific references to evidence of record in support of the assessed limitations, including evaluating any treating and non-treating source opinions and explaining the weight given to said opinion evidence, and (vii) obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the occupational base. *See id*. at 686-87.

The case was assigned to a new administrative law judge, John F. Edwards, who presided at a hearing held on May 25, 2010, that was recessed, following testimony by the plaintiff, to obtain documents related to the question of whether the plaintiff had engaged in substantial gainful activity during the period at issue. *See id.* at 629, 656. The hearing was reconvened on October 14, 2010, at which time the administrative law judge heard further testimony from the plaintiff as well as the testimony of the plaintiff's partner, Jason Reis, and three experts, medical expert Peter B. Webber, M.D., psychological expert James Claiborn, Ph.D., and vocational expert Richard B. Hall. *See id.* at 554-628; *see also id.* at 531.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), by decision dated October 27, 2010, the administrative law judge found, in relevant part, that, through his date last insured, the plaintiff had a severe impairment of an affective disorder/depressive disorder not otherwise specified, Finding 3, *id.* at 534; that, through his date last insured, he had the RFC to perform a full range of work at all exertional levels and could understand and remember complex instructions, execute moderately detailed but not complex tasks on a consistent schedule to complete a workday/workweek, adapt to routine changes in the workplace, and interact with co-workers, supervisors, and the general public, Finding 5, *id.* at 536; that, through his date last insured, considering his age (47 years old, defined as a younger individual, on his date last insured), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 543-44; and that he, therefore, was not disabled at any time from May 1, 2000, his amended alleged onset date, through December 31,

2000, his date last insured, Finding 11, *id*. at 544.³ The Appeals Council found no reason under its rules to assume jurisdiction, *id*. at 503-06, making the administrative law judge's decision the final determination of the commissioner, 20 C.F.R. § 404.984(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## II. Discussion

### A. Compliance With Remand Orders

The plaintiff first complains that the administrative law judge failed to comply with this court's order, as well as that of the Appeals Council, "to conduct a proper longitudinal and comprehensive analysis of all the evidence[,]" as well as the Appeals Council's order to evaluate treating source opinions of record. *See* Statement of Errors at 6-8.

---

³ To obtain SSD benefits, a claimant must demonstrate that he or she was disabled on or before his or her date last insured for such benefits. *See, e.g., Mueller v. Astrue*, 561 F.3d 837, 840 (8th Cir. 2009).

As the plaintiff observes, *see id.* at 6, relevant regulations require that an "administrative law judge shall take any action that is ordered by the Appeals Council[,]" 20 C.F.R. § 404.977(b). He contends that the administrative law judge failed to conduct the required longitudinal and comprehensive analysis in that:

1. Rather than examining the extent to which the plaintiff could sustain activities, he chose to mention only selected activities without regard to their quality, frequency, or brevity, emphasizing the performance of isolated activities. *See* Statement of Errors at 7.

2. He failed to explain how the plaintiff's testimony was inconsistent with his activities, and failed to appreciate the significance of the waxing and waning nature of his mental impairments, overemphasizing his periods of high functioning and improvement. *See id.*

I find no error. In accordance with the orders of the Appeals Council and this court, the administrative law judge obtained updated medical evidence, heard the testimony of both the plaintiff and his partner, and enlisted the assistance of both a medical and a psychological expert in evaluating the totality of the longitudinal evidence, *see* Record at 557-59, which he summarized in his decision, *see id.* at 536-39. With respect to the waxing and waning of the plaintiff's condition, he supportably found that "the evidence demonstrates that when compliant with treatment recommendations, the [plaintiff's] symptoms improved[,]" *id.* at 537, and that "his symptoms over the years have responded favorably to treatment and have for the most part been stable[,]" *id.* at 538; *see also, e.g., id.* at 196, 208, 213, 219, 223-24, 304, 306, 310, 312-13, 320-21, 324, 326, 350, 494, 496-97, 1474-75, 1491, 1541, 1543.

The administrative law judge also adequately explained why he concluded that the plaintiff was capable, both before and after his date last insured, of doing more than he alleged, supplying the following concrete examples, which are supported by the evidence of record:

1.      The plaintiff told examiners on July 1, 1997, that he had started a staffing company and on December 3, 1997, that he had recently gone to New York City and had been cooking up a storm. *See id.* at 539; *see also id.* at 493, 496.

2.      The plaintiff reported on February 18, 2002, that he was supposed to participate in a concert in New York City in two to three days. *See id.* at 539; *see also id.* at 199.

3.      The plaintiff spent a few months in Texas helping a friend settle his deceased partner's estate in early 2004. *See id.* at 539; *see also id.* at 339.

4.      Despite his assertions at hearing that he did little with respect to rental properties owned by himself and his partner, the plaintiff reported to various treating sources in 2005, 2007, 2008, that he was doing work that included cleaning out a garage, taking care of organizing workers to renovate an apartment, and planning to spend time working at a rental property. *See id.* at 539; *see also id.* at 310, 480-81, 1491, 1532, 1534, 1535, 1547.

At oral argument, the plaintiff's counsel did not contest that her client had periods of high functioning; however, she argued that the administrative law judge had cherry-picked those incidents from the record, misapprehending the variable nature of the plaintiff's mental illness and failing to appreciate that, even with treatment, he was incapable on a sustained basis of functioning at work. She contended that the longitudinal evidence of record, including contemporaneous progress notes for the period before and immediately after December 31, 2000, and Dr. Korn's detailed, careful retrospective analysis of the same, demonstrate that, before his date last insured, the plaintiff did not enjoy a remission from depression sufficient to permit the sustained performance of work.

She cited *Punzio v. Astrue*, 630 F.3d 704 (7th Cir. 2011), for the proposition that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of

any single moment says little about her overall condition." *Punzio*, 630 F.3d at 710. The *Punzio* court held that, based on this fundamental misunderstanding, an administrative law judge had erroneously rejected a treating psychiatrist's assessment of a claimant's functional limitations. *See id*. ("[B]y cherry-picking [the treating psychiatrist's] file to locate a single treatment note that purportedly undermines her overall assessment of [the claimant's] functional limitations, the ALJ [administrative law judge] demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness.").

 *Punzio* is materially distinguishable. In this case, unlike in *Punzio*, the administrative law judge pointed to a number of incidents of higher functioning over a period of years, rather than to one seemingly discrepant treatment note. *See* Record at 537-39. More importantly, in this case, unlike in *Punzio*, the administrative law judge had the benefit of a conflicting expert opinion, that of Dr. Claiborn. *Compare Punzio*, 630 F.3d at 713 (because treating psychiatrist's assessment was well supported and consistent with the medical evidence, "it must carry the day[,]" and, "because the record does not contain a conflicting opinion, we need not prolong these proceedings any further"). Presumably, Dr. Claiborn, who was qualified as an expert in psychology, *see* Record at 616-17, did not labor under a misunderstanding concerning the nature of mental illness. Yet, with the benefit of review of the entire record and of hearing the testimony of the plaintiff and his partner, *see id.* at 618, he found the plaintiff capable, on or before his date last insured, of performing work-related functions with some mild to moderate impairments, the nature of which he detailed, *see id*. at 618-21.

 At oral argument, the plaintiff's counsel challenged the administrative law judge's reliance on the Claiborn opinion, contending that Dr. Claiborn conclusorily rejected Dr. Korn's retrospective opinion on the basis that it purportedly did not match up with contemporaneous

records, an approach that flew in the face of the Appeals Council's directive to consider the Korn opinion with care and to properly evaluate expert opinion evidence. She argued that the Claiborn opinion, accordingly, was entitled to little weight.

However, as counsel for the commissioner rejoined at oral argument, the plaintiff did not raise a separate challenge, in his statement of errors, to the administrative law judge's reliance on the Claiborn opinion. Instead, he merely argued that "[b]ecause the ALJ's reasons for refusing to provide more weight to the opinions of the treating physicians are insufficient, he was not entitled to rely on the opinions of the nontreating, nonexamining sources." Statement of Errors at 15. The point, hence, is waived. *See, e.g., Farrin*, 2006 WL 549376, at *5.[4]

In any event, even were the point not waived, the plaintiff falls short of demonstrating that the administrative law judge erred in relying on Dr. Claiborn's analysis of Dr. Korn's retrospective opinion. Dr. Claiborn testified:

> I'm not quite sure [how] Dr. [K]orn arrived at his opinion. He, he references Dr. Goldberg's records, but offers a completely different diagnosis – or, two diagnoses, and, you know, is, is offering this sort of retrospective opinion that doesn't seem to me to match up with the records from the period in question. So, I, I'm not quite sure how he arrived at, at his conclusions[.]

Record at 622. This explanation, in the context of Dr. Claiborn's testimony as a whole, was not so conclusory as to preclude reliance upon it. Dr. Claiborn had explained, in detail, the functional restrictions that he felt were supported by the contemporaneous progress notes, testifying that Dr. Goldberg's diagnosis of a depressive disorder, not otherwise specified

---

[4] The plaintiff did assert, in a footnote to the above-quoted portion of his statement of errors, that, "in coming to his conclusions, Dr. Claiborn seems to have ignored the 1999-2001 records from Dr. Yarian and the records from Dr. Naimark." Statement of Errors at 15 n.6 (citation omitted). He argued that, by contrast, the review of records conducted by Dr. Korn appeared "to have been far more thorough." *Id.* Although Dr. Claiborn did not discuss the Yarian and Naimark records, *see* Record at 618-23, it does not follow that he ignored them. He affirmed, at the outset of his testimony, that he had "reviewed the medical records[.]" *Id.* at 618. Although he stated that he had relied "primarily" on the records of Dr. Goldberg, *see id.* at 619-20, he also testified that Dr. Korn's retrospective opinions did not seem to him "to match up with the records from the period in question[,]" *id.* at 622.

("NOS"), was reasonable and was the only disorder that he (Dr. Claiborn) could identify in the relevant time period. *See id*. at 618-21; *see also id*. at 497 (diagnosis by Dr. Goldberg on July 1, 1997, of depressive disorder, NOS). Dr. Korn, by contrast, had stated in his retrospective opinion that the plaintiff had been "severely depressed with recurrent Major Depression and Panic Disorder with agoraphobia with many episodes of severe illness probably since four or so years before Dr. Goldberg first evaluated [the plaintiff] in July of 1997." *Id*. at 501.

While Dr. Korn's explanation for his opinion was more detailed than that of Dr. Claiborn, that did not necessarily render it more persuasive. Dr. Claiborn's testimony sufficed to create a legitimate conflict in expert opinion that the administrative law judge was entitled to resolve. *See, e.g., Shaw v. Secretary of Health & Human Servs*., No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994) ("The regulations do not require a particular view of the evidence, but leave ambiguities and inconsistencies to be sifted and weighed by the ALJ, who may, as here, use a consultative examination to help resolve uncertainties. The ALJ must evaluate all medical opinions from all sources in light of a non-exclusive list of possibly relevant factors. While generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources may override treating doctor opinions, provided there is support for the result in the record.") (citations omitted).

For all of the foregoing reasons, the administrative law judge complied with the directive of this court and the Appeals Council that he conduct a longitudinal and comprehensive analysis of the medical and other evidence of record.

The plaintiff next complains that the administrative law judge transgressed the Appeals Council's directive that he evaluate treating source opinions and explain the weight given to them when he dismissed all treating source opinions that the plaintiff was disabled – as opposed

to those delimiting his functional capabilities – on the sole basis that the issue of disability is reserved to the commissioner.  *See* Statement of Errors at 7-8; Record at 542-43.  He argues that, in so doing, the administrative law judge failed to give due consideration to those opinions.  *See* Statement of Errors at 8.

The administrative law judge's handling of these particular opinions complied with the Appeals Council's order: he evaluated them and explained the weight given to them.  *See id*. at 542-43, 687.  In any event, assuming *arguendo* that the administrative law judge's handling of these opinions deviated in some respect from the Appeals Council's directives regarding the evaluation of expert opinion, any error was harmless.  *See Oliver v. Astrue*, No. 07-157-B-W, 2008 WL 2778229, at *8-*9 & n. 10 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 22, 2008) (applying harmless error analysis in context of asserted failure to comply with Appeals Council order).  As explained below, the administrative law judge arrived at a supportable mental RFC determination for the period on and before the plaintiff's date last insured.  The plaintiff does not challenge the Step 5 finding that a person with that RFC was capable of performing work existing in significant numbers in the national economy.  He, therefore, was not disabled as a matter of law.

### B.  Treatment of Treating Source Opinions

The plaintiff argues that the administrative law judge erred in rejecting, without good, sufficient reasons, multiple treating source opinions that he suffered from disabling mental limitations on or before December 31, 2000.  *See* Statement of Errors at 8-15; *see also, e.g.,* 20 C.F.R. § 404.1527(d)(2) (adjudicators will "always give good reasons in [their] notice of determination or decision for the weight [they] give [a claimant's] treating source's opinion").  The plaintiff contends that, because the administrative law judge gave insufficient reasons for

rejecting the opinions of treating physicians, he was not entitled to rely on the opinions of non-treating sources (including Dr. Claiborn).  *See* Statement of Errors at 15.

At oral argument, the plaintiff's counsel also argued that the Appeals Council had "credited" the Korn opinion and had implied that its rejection on the bases that it was retrospective, or that Dr. Korn had not treated the plaintiff during the relevant period, would be improper.

The Appeals Council did not "credit" the Korn opinion or direct the administrative law judge to do so.  Rather, it stated that the opinion, which it summarized, required evaluation.  *See* Record at 686.  Even assuming, *arguendo*, that the opinion could not supportably be rejected solely on the bases that it was retrospective and that Dr. Korn did not treat the plaintiff during the relevant period, the administrative law judge supplied other good and sufficient reasons for declining to adopt either that opinion, or other treating source opinions.

The record contains several opinions of Dr. Korn, as well as an opinion of primary care physician Peter Leavitt, M.D., and an opinion of psychiatrist Kaloyan Tanev, M.D., regarding the impact of the plaintiff's mental impairments on his ability to work.

Dr. Korn completed a Mental Impairment Questionnaire on March 28, 2006, in which he indicated, *inter alia*, that, as of that time, the plaintiff had moderate limitations in activities of daily living, slight limitations in social functioning, frequent deficiencies of concentration, persistence, or pace, and repeated (three or more) episodes of decompensation.  *See id.* at 361.  He did not purport to address the plaintiff's condition on or before December 31, 2000.  *See id.* at 362.

Subsequent to Administrative Law Judge Bassett's adverse decision, Dr. Korn submitted the September 28, 2007, retrospective opinion, titled "Disability Evaluation," that formed a basis for the commissioner's motion for remand. *See id.* at 499-502, 680. Dr. Korn found:

> My review of the previous medical/psychiatric records from 1997 through 2002 reveals that [the plaintiff's] depression and Panic Disorder waxed and waned with the treatment provided and the stresses he encountered. However, even when the records indicate that he was feeling well ("great" as in Dr. Yarian's note of 05/22/00), his stability is never sustained and his level of functioning is never robust and adequate to do work beyond some cooking and minimal housework. He is always at risk for stress-related breakdown which occur[s] at minimum two or more times per year. He is never able to function outside a very limited degree around his home from at least 1997 when his treatment with Dr. Goldberg began through the present. It is in this context that I find [the plaintiff] to have been completely disabled secondary to his psychiatric disorder from at least 1997 to the present.
>
> I also have noted a persistent inability by [the plaintiff] to handle stress in an effective manner. This has been the case throughout my treatment of [the plaintiff] from 2003 to the present. It is also apparent in review of the records from 1997 through 2002.

*Id.* at 502. He stated that "the mental impairment questionnaire that I filled out for [the plaintiff] dated March 28, 2006 would be essentially the same for the retrospective period dated to December of the year 2000." *Id.* at 501.

Dr. Korn also submitted an opinion dated April 22, 2010, in which he assessed the plaintiff's current level of functioning and reiterated his retrospective opinion of September 27, 2007. *See id.* at 1517 ("As I have indicated in the past, I have suspected that this [plaintiff] has been completely disabled at least since the mid-1990's, if not significantly prior to that time."). In addition, he completed a Mental Impairment Questionnaire on April 27, 2010, finding, *inter alia*, that the plaintiff had marked restriction of activities of daily living, moderate difficulties in maintaining social functioning, marked deficiencies of concentration, persistence, or pace, and three episodes of decompensation. *See id.* at 1513. He indicated that the symptoms and

limitations noted in the questionnaire applied as of approximately the mid-1990s, cross-referencing his Disability Evaluation of September 27, 2007. *See id*. at 1514.

Dr. Leavitt completed a Mental Impairment Questionnaire on May 3, 2006, in which he found, *inter alia*, that the plaintiff had moderate restriction of activities of daily living and marked difficulties in maintaining social functioning, that he often had deficiencies of concentration, persistence, or pace, and that he had one or two episodes of decompensation. *See id*. at 396. Dr. Leavitt also indicated that the plaintiff had poor or no ability to perform a number of work-related mental functions. *See id*. at 394-95. Dr. Leavitt, who had been treating the plaintiff for two years, did not purport to address his condition as of December 31, 2000. *See id*. at 391, 397.

Finally, Dr. Tanev, who began treating the plaintiff on August 4, 2009, *see id*. at 1444, completed a Mental Impairment Questionnaire on May 11, 2010, in which he assessed the plaintiff as having moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace, with one or two episodes of decompensation, *see id*. at 1558, and deemed him unable to meet competitive standards with respect to a number of work-related mental functions, *see id*. at 1556-57. Dr. Tanev indicated that these symptoms and limitations applied as early as approximately 1995. *See id*. at 1559.

The administrative law judge accorded little weight to Dr. Korn's opinions insofar as they pertained to the period prior to the plaintiff's date last insured on the bases that (i) Dr. Korn had not treated the plaintiff prior to January 14, 2003, (ii) Dr. Korn acknowledged on September 28, 2007, that it is difficult to retrospectively determine whether a patient was disabled prior to the actual time of first assessment, (iii) Dr. Korn's opinions were not consistent with the evidence

14

prior to the date last insured and were contradicted by his own multiple reports over the years that the plaintiff was doing well from a psychological perspective, and (iv) Dr. Korn's March 28, 2006, opinion was not consistent with his April 27, 2010, opinion. *See id*. at 541.

The administrative law judge gave little weight to Dr. Leavitt's opinion because Dr. Leavitt had not treated or examined the plaintiff at any time on or before his date last insured and his opinions were not well-supported and appeared to be based on the plaintiff's more current subjective allegations. *See id*. at 542. He gave little weight to the retrospective opinion of Dr. Tanev because Dr. Tanev had only begun treating the plaintiff within the past few years and appeared to have based his opinion of his functioning prior to December 2000 on the plaintiff's subjective allegations. *See id*.

The plaintiff argues that these were not good, sufficient reasons to reject the treating sources' opinions because the administrative law judge:

1. Selectively reviewed the evidence in arriving at the conclusion that the plaintiff's symptoms responded favorably to treatment. *See* Statement of Errors at 10. He points to records of a treating source, David Yarian, M.D., from the years 2000 and 2001 indicating that trials of different medications had not resolved his problems. *See id*.;

2. Overlooked indications in Dr. Korn's notes that the plaintiff had recurring symptoms that waxed and waned, and misinterpreted notations that the plaintiff was doing well and/or was stable, which did not suggest that he was sufficiently functional to work. *See id.* at 11- 13;

3. Wrongly accorded less weight to Dr. Korn's opinion on the basis that Dr. Korn had not treated the plaintiff during the relevant period. *See id*. at 13-14; and

    4.    Erroneously seized on Dr. Korn's comment that it was difficult to provide a retrospective opinion when Dr. Korn had, in fact, felt comfortable providing an unqualified retrospective disability opinion. *See id*. at 14.

    The plaintiff does not deny that there were discrepancies between Dr. Korn's 2006 and 2010 questionnaires, but contends that these discrepancies, standing alone, provide an insufficient basis on which to discount all of Dr. Korn's opinions. *See id.* at 14-15.[5]

    He adds that the administrative law judge wrongly rejected the opinions of Drs. Leavitt and Tanev on the basis that they did not treat him during the relevant time period, an improper ground for rejection, and that his assertion that their opinions were based on the plaintiff's subjective allegations is simply a matter of conjecture. *See id.* at 13 n.4. He argues that, to the extent that the administrative law judge deemed Dr. Leavitt's opinion "not well supported[,]" the criticism is "too generic to permit meaningful review." *Id*. (citation and internal quotation marks omitted).

    Nonetheless, as discussed above, the administrative law judge supportably found that the plaintiff's symptoms tended to respond favorably to treatment, that the plaintiff was capable of doing more than alleged, and that Dr. Korn's opinion was inconsistent with contemporaneous treatment records, which Dr. Claiborn construed as reflecting a more mild diagnosis and far fewer restrictions than did Dr. Korn. *Compare* Record at 499-501 *with id*. at 619-22.

---

[5] As the administrative law judge noted, *see* Record at 541, Dr. Korn indicated in 2006 that the plaintiff had a good ability to understand, remember, and carry out very short and simple instructions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes, and be aware of normal hazards and take appropriate precautions, *see id*. at 359-60. By contrast, in 2010, Dr. Korn indicated that the plaintiff had serious limitations in his ability to understand and remember very short and simple instructions, be aware of normal hazards and take appropriate precautions, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. *See id*. at 1556. Dr. Korn stated, contradictorily, that *both* the 2006 restrictions and the 2010 restrictions were present prior to the plaintiff's date last insured. *See id*. at 501, 1559. Although, at oral argument, counsel for the commissioner agreed that these discrepancies, standing alone, form an insufficient basis on which to reject the Korn retrospective opinions, she persuasively argued that they cast doubt on the overall reliability of those opinions.

These findings, coupled with (i) the discrepant 2006 and 2010 mental RFC opinions, both of which Dr. Korn contradictorily indicated described the plaintiff's condition prior to his date last insured, and (ii) the fact that Dr. Korn did not initiate treatment of the plaintiff until more than two years after his date last insured and stated that "of course it is difficult to retrospectively determine whether a patient was disabled prior to the actual time of first assessment," *id*. at 499, constituted good reasons for according little weight to Dr. Korn's retrospective opinions.[6]

The administrative law judge likewise gave good reasons for rejecting the Leavitt and Tanev opinions. Dr. Leavitt's opinion was indeed based on the plaintiff's then-current level of functioning; he expressed no opinion as to when the noted restrictions first applied. *See id*. at 397. Dr. Tanev offered no basis for his opinion that the plaintiff's restrictions first applied in 1995. *See id*. at 1559. In the circumstances, the administrative law judge reasonably could have concluded that the basis appeared to be the plaintiff's subjective allegations as to his level of functioning prior to December 31, 2000.

Because the administrative law judge considered and supportably rejected the retrospective opinions of treating sources, he did not err in according substantial weight to the retrospective opinion of Dr. Claiborn, who had reviewed the entire record and listened to the plaintiff's and his partner's hearing testimony. *See id*. at 540 (deeming well-reasoned and consistent with the record as a whole the opinion of Dr. Claiborn that, during the relevant time, the plaintiff could remember at least detailed instructions, interact with co-workers or supervisors, and adapt to change at work; noting that Dr. Claiborn was not sure how Dr. Korn could have arrived at his opinions to the contrary); *see also, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the

---

[6] Even assuming, *arguendo*, that the rejection of Dr. Korn's opinion on the bases that it was retrospective and that Dr. Korn had not treated the plaintiff during the relevant period was improper, the administrative law judge supplied sufficient additional reasons for declining to adopt it.

17

resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

### C. Credibility Determination

The plaintiff finally challenges the administrative law judge's credibility determination, asserting that it rests on the same flawed analyses of his medication compliance, the waxing and waning nature of his condition, and his activities of daily living described in connection with his first and second points of error. *See* Statement of Errors at 15-16. For the reasons discussed above, I find no error in those analyses. Hence, the plaintiff fails to demonstrate a basis on which to disturb the administrative law judge's credibility determination. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

### III. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 2nd day of July, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
